Wanda Jo BROWN, Appellee,

v.

Jack C. BROWN, Appellant.

No. 50802.

Court of Appeals of Oklahoma, Division 2.

June 27, 1978.

Rehearing Denied July 24, 1978.

Certiorari Denied Oct. 23, 1978.

Released for Publication by Order of Court of Appeals Oct. 26, 1978.

Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, for appellee.

Glenn P. Bernstein, Don L. Dees, Inc., Tulsa, for appellant.

BRIGHTMIRE, Judge.

Exactly 30 years after they fell in love a well-known Miami, Oklahoma attorney and his wife were divorced. The toughest problem faced by the trial court was how to equitably divide about $300,000 worth of jointly accumulated assets. Both parties requested an equal division and presumably the trial court decided this would be fair and just. The attorney appeals complaining not of the court's attempt to effect equality but that his effort was unsuccessful.

I

To plaintiff wife was given various assets valued by the trial court at $129,453 and to the defending lawyer was given property the court valued at $173,359.34. Presumably to attain equality the trial court gave the wife a judgment against the attorney for $36,300, payable at the rate of $300 per month for 10 years, and ordered the man to pay all debts of the parties and the wife's attorney's fee in the sum of $3,000. Thus according to his figures the court awarded property valued at $165,753.30 to the wife (which did not include the value of furni-

ture and equipment worth about $17,000 awarded to the wife) and $173,359.34 to the husband.[1] This is deceptive, however, because the wife's figure included a $36,300

1.

#### PLAINTIFF'S SHARE

| Real Estate | Address | Value | Equity |
|---|---|---|---|
| 1. | 30 M Street SE, Miami, Ok. | $ 6,500.00 | $ 6,500.00 |
| 2. | 2204 A Street NE, Miami, Ok. | 8,750.00 | |
| | encumbrance | 1,200.00 | 7,550.00 |
| 3. | 2217 A Street NE, Miami, Ok. | 10,500.00 | 10,500.00 |
| 4. | 1104 McKinley (homestead), Miami, Ok. | 70,000.00 | 70,000.00 |
| 5. | Bernice, Ok. lots | 6,000.00 | |
| | encumbrance | 5,117.00 | 883.00 |
| 6. | Mays County, Ok. lot | 200.00 | 200.00 |

Other Property

| | | | |
|---|---|---|---|
| 7. | Hall Apartments proceeds | | 2,564.56 |
| 8. | Indian Headright | | 2,500.00 |
| 9. | All oil royalties | | 15,000.00 |
| 10. | Income and rents from awarded real property | | No value assigned |
| 11. | Telex debenture, Miami Golf Club stock, plus 50% of all other stock owned by the parties | | 7,237.50 |
| 12. | New York Life Insurance Policy plus teacher retirement plan and American Fidelity Tax Sheltered Fund | | 4,259.24 |
| 13. | 1972 Mercury automobile | | 2,000.00 |
| 14 | Savings account | | 259.00 |
| 15. | 50% of all property of parties not specifically assigned | | No value assigned |
| 16. | All her personal effects | | No value assigned |
| 17. | Money in lieu of property at $300/month | | 36,300.00 |
| | | | $165,753.30 |
| | Plus: (1) Household Furnishings | | 17,283.00 |
| | Net Share | | $183,036.30 |

#### DEFENDANT'S SHARE

| Real Estate | Address | Equity |
|---|---|---|
| 1. | 101 A Street SE (law office & furnishings) Miami, Ok. | $50,000.00 |
| 2. | 9 D Street SW, Miami, Ok. | 11,500.00 |
| 3. | Noel, Missouri property | 12,000.00 |
| 4. | Garage/massage parlor | 25,000.00 |
| 5. | Samco trailer lots | 5,000.00 |
| 6. | Frontier Motel property interest | 21,701.68 |

Other Property

| | | |
|---|---|---|
| 7. | Personal effects | No value assigned |
| 8. | IRS tax overpayment | $ 7,679.00 |
| 9. | Savings account | 303.00 |
| 10. | 1973 Lincoln automobile | 5,000.00 |
| 11. | Proceeds of Federal Mogul stock | 9,000.00 |
| 12. | Proceeds of Four Seasons Nursing Home stock | 14,000.00 |
| 13. | Retirement plan monies | 9,475.66 |
| 14. | Rental from real estate awarded | No value assigned |
| 15. | Contested fee in Cora Lewis matter | 2,700.00 |
| 16. | 50% of parties' stock | No value assigned |
| 17. | 50% of other property not specifically assigned | No value assigned |
| | | $173,359.34 |
| | Less: (1) Money Judgment | 36,300.00 |
| | (2) Wife's Attorney's Fee | 3,000.00 |
| | Net Share | $134,059.34 |

money judgment payable by the husband which was not subtracted from the value of property awarded the husband. When this adjustment is made the husband is left with a net award of $137,059.34—a $28,000 disparity if the furniture is not included and $45,000 if it is.

## II

Appellant husband's first contention is that the trial court erred in the division of property. His argument is that both parties "urged the trial court to divide the marital estate equally in the interest of fairness" and although the court attempted to do so, he failed, because he inappropriately assigned distorted values to four assets awarded appellant, namely: (a) the Federal Mogul stock; (b) the Frontier Motel mortgage; (c) the income tax refund; and (d) the Noel, Missouri house.

The value of his "stock holdings in Federal Mogul Corporation," says the man, "was grossly miscalculated to defendant's disadvantage," because the stock had been sold several months before for $9,000 and $6,150 of it was used to buy two cars for his children which the court concluded were not to be as part of the joint assets. Thus, he concludes, the court should have apportioned no more than $2,850 between the parties.

■ This point has merit. The stock was not an existing asset of the parties when the division was made and at least two-thirds of it had been disposed of in a manner and for a purpose not complained of by the woman. There is no evidence that the balance retained its identity. Presumably it either became a part of some other joint assets or was spent for legitimate living expenses.

■ The second point—regarding the Frontier Motel—is that the trial court erroneously valued a "second or third mortgage" held by the parties on the motel property at its face value of $21,701 despite the fact that evidence indicated it was worthless because of prior lien holders. We cannot find evidence clearly supporting this contention. The only testimony we can

find on the subject is appellant's and all he said was that he was not sure that when the motel is sold it would bring in enough to pay the mortgage off, but added, "I'm hopeful." To us this testimony indicates there may be some question about whether the motel can be sold for enough to pay the note and mortgage in full. If it is not, however, appellant said one of the makers of the note (a former business partner of appellant) was responsible for the deficit. This evidence would not justify the trial court's concluding the mortgage is worthless.

The third asset said to have been overvalued is the income tax refund item of $7,679 resulting from an "alleged" tax overpayment on appellant's 1975 taxes. In assigning this receivable the trial court said: "[Q]uite frankly, the reason that I awarded that to the defendant [appellant] is, of course, he is a lawyer and testified that he was going to be working for the Oklahoma Tax Commission. I felt that if either of the parties was in a better position to obtain these funds, it would be the defendant . . . ." Obviously, this is not a proper criterion for assessing the value of the asset. The controlling issue involves a determination of how likely it is that the parties will be refunded the amount they claim. Concerning the asset, appellant testified: "Well, they [IRS] are allowing us $2,679 overpaid. They said $5,000 of that was current income which was this year [1977]. And, by golly, we paid it, and I don't know how in the heck they can keep us from getting credit on it . . . and we're fighting that [the $5,000 refund reduction] tooth and toenail."

■ We cannot say, therefore, under this evidence that the trial court's valuation of the asset was clearly against the weight of the evidence.

The last assailed asset value is a house awarded appellant located in Noel, Missouri, possessed by appellant's 93-year-old aunt. Appellant testified his aunt, who formerly was the sole owner of the property, mortgaged it for $5,800 at some undisclosed earlier date, later defaulted on the loan and, to

prevent foreclosure, appellant said he paid off the mortgage, had his aunt execute a deed conveying title to the property to appellant and his wife subject to a life estate in the grantor, and then put his aunt in a nursing home. Since then, said appellant, "her [the aunt's] son has indicated that he feels like it's his property and that he should have it, but he insinuates that we used undo [sic] influence to obtain the property which [sic] I'd like to have the $5,800." Appellant went on to say that he had not taken any advantage of his aunt and he felt they had a valid interest in the property—property which was valued by appellee at $12,000. Under these circumstances the court, according to appellee, should have valued the house at $5,800 rather than $12,000.

■ We agree that equating the value of the remainder interest with the market value of the property was improper. Just what the difference is in view of the life tenant's advanced age is hard to say. Certainly it is more than what it would be if the life tenant were, say, only 50 years old. Given today's market of rising real estate prices a prospective purchaser would likely be willing to pay a fair percentage of the market value on the theory that the life tenant's interest will soon end and that for the short term appreciation of the property will more than offset the loss of rental income. Appellant did not present any evidence on the value of the interest and so the only two figures the court had to go by were the mortgage indebtedness of $5,800 and the market value figure of $12,000. While appellee opined the property was worth $12,000 at one point, she also said at another point in response to a leading question that the value of the parties' interest was $12,000. We, therefore, cannot say that the judicial finding was bereft of evidence or indiscreet.

Besides questioning the foregoing values, appellant complains that he was given no credit at all for his interest in the household furnishings and equipment awarded to his wife. She counters with the suggestion that the appraisal of the house ($70,000) included the furnishings. Appellant denies this and the testimony of the appraiser tends to support him. All the appraiser said was that he appraised the homestead property at $70,000. The witness did not say, nor did either party ask him, anything about any furnishings. The wife testified they were worth about $2,000 and appellant offered an exhibit containing an itemized list of furnishings reflecting values totaling $17,283 prepared by the wife and an insurance agent.

■ The trial court mistakenly considered that the furnishings were included in the house appraisal. And so the question is: Does this mistake require the conclusion that awarding the furnishings to the wife without giving appellant credit for half the value constitute a judicial indiscretion? We think it does. As shown in footnote one the trial court's decree gave $183,036.30 to the wife, (or $146,736.30 without the $36,300 judgment) or about 40% of a total estate of around $302,000; and he got $173,359 or 60%. We do not know what joint assets were accumulated as a result of the woman's school teaching earnings because according to the evidence she kept these in a separate account through the years and at trial—for reasons not readily apparent—she was not required to disclose the amount nor include it in with the rest of the "jointly acquired" property. It may be that the court and the parties treated her earnings as "separate" property and only the husband's earnings as "jointly acquired" assets—a view sustainable by neither law nor logic. Moreover the net estate did not take into account jewelry the wife possessed which she valued at over $5,000 paid for with "jointly acquired" assets.[2]

2. This generates an interesting thought. If joint assets can be converted into the wife's separate property by gifts from the husband, can he likewise convert joint assets into his separate property by (a) a gift to himself, or (b) asking the wife for a gift? Ordinarily jewelry is a major gift item and the value of that worn by the man is commonly considerably less than that worn by the woman.

Finally the man was ordered to pay the woman's attorney's fee out of his share of the jointly acquired assets, thus further reducing his net share of the estate.

A recapitulation of the trial court's division of distributable assets modified to reflect the foregoing, results in the following:

| To plaintiff: | Items 1 through 16 (footnote 1) | $129,453.00 |
| | Household Furnishings | 17,283.00 |
| | Total Net Award | $146,736.00 |
| | | |
| To defendant: | Items 1 through 10 and 12 through 17 | $164,359.34 |
| | Less plaintiff's attorney's fee | 3,000.00 |
| | Total Net Award | $161,359.34 |

It is apparent, therefore, that the trial court's division of existing assets is not equitable because consideration was not given to the reduction in value of the net assets assigned to the man resulting from the money judgment against him and in favor of the woman. Under the evidence in the record, we hold it was unjust and unfair to decrease the man's net award down to approximately $120,000 (about 40% of the estate) while increasing the woman's to $183,000 (about 60% of the estate) by means of a $36,300 money judgment against the man. *Hill v. Hill,* 197 Okl. 697, 174 P.2d 232 (1946).

We therefore modify the decree appealed from to the extent of vacating the $36,300 money judgment and awarding the woman the IRS tax overpayment valued by the court at $7,679.00. This results in the woman receiving scheduled assets valued at $154,415, and the man those worth $153,-680.34. In all other respects the judgment is affirmed.

BACON, J., concurs.

NEPTUNE, P. J., dissenting:

Though the parties urged the trial court to divide the property 50% to each, appellee simultaneously was asking the court to provide to her some support alimony. The trial court did not provide support alimony. This could have influenced the court to avoid a division of the property 50% to each, prompting an award to appellee wife somewhat greater than that made to appellant. The division, in all the circumstances, is an equitable one, and in my opinion warrants affirmance.

Specifically, one item was, I think, improperly considered by the majority; another item taken into account by the trial court was omitted from consideration by the majority.

This court's opinion makes a finding that appellee is chargeable with an award of the value of $17,283 for the contents of the home. However, the trial court considered the valuation of the homestead to include the contents thereof. The evidence supports the trial court in this matter. The witness, Mike Long, though making no specific reference to the contents, stated that he placed the value of "the property at 1104 McKinley" (the home place) at $70,000. He similarly appraised the value of the office building awarded to appellant at $50,000 by the inclusion of the contents. The trial court was, under the evidence, justified in assigning no separate value to the contents of the home.

The other item considered by the trial court, but not considered by the majority opinion, was the $29,800 used by appellant to set up a trust. The trial court stated that he took that into account to arrive at the eventual division. The valuations thus could be computed to be awards of property to appellee in the amount of $165,753 ($183,036 less $17,283) and to appellant of $203,159 ($173,359 plus $29,800). The present-day value of $36,300 payable over a period of 10 years is about $25,000. Subtracting that sum from appellant's award and adding it to appellee's award would make the division values approximately $190,000 for appellee and $178,000 for appellant. In the circumstances here obtaining—32 years of marriage, raising four children, disparate earning capacity, no support alimony—the judgment is within the limits of appropriate discretion.